# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | : | Case No. 1:02CV0844 |
| | : | |
| SCRAP METAL ANTITRUST LITIGATION | : | JUDGE O'MALLEY |
| | : | |
| | : | |
| | : | **MEMORANDUM & ORDER** |

Defendants Harry Rock & Associates, Inc., M. Weingold & Co., Inc., Columbia National Group, Inc., Columbia Iron & Metal Co., and Jack Weingold, have moved for a six month stay of all discovery against them. The Government has moved to intervene, pursuant to Fed. R. Civ. P. 24, for the purpose of seeking a stay of all discovery, except that relating to the production of documents and the determination of class certification. Plaintiffs oppose any form of a stay.

After extensive briefing from all sides, the Court conducted a hearing on October 17, 2002. After hearing argument from all sides, the Court held an *in camera* discussion with the Government regarding the nature and scope of its criminal investigations, the likelihood of subsequent criminal indictments relating to the subject matter of this lawsuit, and the prejudice, if any, to the Government from ongoing discovery in this civil action.

As none of the parties object to the Government's intervention and the Court finds that the

Government has an interest in the subject of this action, the Court **GRANTS** the Government's motion to intervene.

For the reasons stated below, the Court substantially **DENIES** the Defendants' and the Government's motions for a stay of discovery. The Court grants those motions only to the extent that it imposes certain limitations on and dictates certain procedures for the taking of depositions, as discussed below in more detail,.

**I. Factual Background**

After the conviction of a Cleveland-area scrap metal shredder in 1999 in Miami, Florida, stemming from investigations beginning in 1995, the Government began investigations into industrial scrap metal dealers in Northeast Ohio. As a result of these continuing investigations, the Government filed two criminal cases in the Northern District of Ohio and obtained plea agreements from Bay Metal, Inc. and Howard Bahm. The indictments alleged that these defendants engaged in a conspiracy, starting as early as 1992, to allocate scrap metal suppliers and rig bids in the purchase of scrap metal in the Cleveland-Akron and Canton-Massillon areas. To date, the Government has interviewed over 150 witnesses, conducted numerous grand jury sessions, subpoenaed thousands of documents, seized thousands of documents through search warrants, and engaged in numerous plea negotiations with putative defendants and their lawyers. The Government continues to investigate this industry and has issued target letters to certain of the Defendants in this action.

As a result of the indictments and information obtained through their own investigations, Plaintiffs filed a class action complaint alleging that Defendants conspired to fix prices, allocate market share, and

artificially reduce the prices of ferrous and non ferrous scrap metal from December 1, 1992 to March 2000. Plaintiffs seek substantial monetary payments that they claim are necessary to recoup losses the class incurred as a result of Defendants' conspiracy and to deter Defendants and others from similar conduct in the future.

## II. Applicable Law

The Constitution ordinarily does not require a court to issue a stay of civil proceedings pending the outcome of criminal proceedings. *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 324 (9th Cir. 1995); *Securities and Exch. Comm'n v. Novaferon Labs, Inc.*, 941 F.2d 1210 (table), **2 (6th Cir. Aug. 14, 1991); *Securities and Exch. Comm'n v. Dresser Indus., Inc.*, 628 F.2d 1368, 1375 (D.C. Cir. 1980) (en banc). Parallel proceedings are unobjectionable as long as the rights of the parties are not substantially prejudiced. *Dresser*, 628 F.2d at 1374. Indeed, "a defendant has no absolute right not to be forced to choose between testifying in a civil matter and asserting his Fifth Amendment privilege." *Keating*, 45 F.3d at 326. The Court, however, does have the discretion to stay civil proceedings, postpone civil discovery, or impose protective orders or other conditions "when the interests of justice seem[] to require such action, sometimes at the request of the prosecution, . . . sometimes at the request of the defense." *Dresser*, 628 F.2d at 1375 (quoting *United States v. Kordel*, 397 U.S. 1, 12 n.27 (1970)). *See also Keating*, 45 F.3d at 324; *Afro-Lecon, Inc. v. United States*, 820 F.2d 1198, 1202 (Fed. Cir. 1987) The Court must make this determination in light of the particular circumstances of the case. *Afro-Lecon*, 820 F.2d at 1202; *Dresser*, 628 F.2d at 1375.

In deciding whether to exercise its discretion in favor of a stay, the Court must balance the interests

of parties who are before the Court, as well as those who are not. The most common factors considered by courts are those outlined in Judge Louis Pollack's opinion in *Golden Quality Ice Cream Co., Inc. v. Deerfield Specialty Papers, Inc.*, 87 F.R.D. 53, 56 (E.D. Pa. 1980):

1. the interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay;

2. the burden which any particular aspect of the proceedings may impose on defendants;

3. the convenience of the court in the management of its cases, and the efficient use of judicial resources;

4. the interests of persons not parties to the civil litigation; and

5. the interest of the public in the pending civil and criminal litigation.

Other Courts have considered similar factors: (1) the applicability of the Fifth Amendment to the parties (*i.e.*, whether they were individuals or corporations) and whether or not an indictment was pending; (2) whether the government was the plaintiff (out of concerns about the government abusing the broader civil discovery provisions); and (3) judicial concerns about efficiency and its docket. *In re Tower Metal Alloy Co.*, 188 B.R. 954, 956–58 (Bankr. S.D. Ohio 1995).

As a general proposition, the case for staying civil proceedings is strongest where an individual defendant is under indictment and has asserted Fifth Amendment concerns. *Dresser*, 628 F.2d at 1376. Conversely, the case is far weaker where no indictment has been returned or where the defendant indicted is a corporation. *Id.* In fact, requests for pre-indictment delays are often, but not always, denied. *United States v. Private Sanitation Indus. Assoc. of Nassau/Suffolk, Inc.*, 811 F. Supp. 802, 805 (E.D.N.Y.

1992). *But see, e.g., Securities and Exch. Comm'n v. Downe*, No. 92 Civ 4092 (PKL), 1993 WL 22126 (S.D.N.Y. Jan. 26, 1993); *Integrated Generics, Inc. v. Bowen*, 678 F. Supp. 1004 (E.D.N.Y. 1988); *United States v. Hugo Key and Son, Inc.*, 672 F. Supp. 656 (D.R.I. 1987).

### III. Defendants' Motion for a Stay of Discovery

Defendants M. Weingold, Harry Rock, Columbia National Group, and Columbia Iron & Metal, as well as Jack Weingold, the only individual named in this action, move this Court for a six month stay of discovery against them. If, at the end of the six-month period, the Government has not completed its criminal investigations and resolved the matter, the Defendants expect to ask for a continuation of the stay.

All of the Defendants assert that a stay will prevent undue prejudice to them caused by simultaneously having to defend civil and criminal proceedings. The Defendants also argue that a stay will prevent the Government from using civil discovery to circumvent the limitations imposed by the criminal discovery rules. Finally, the corporate Defendants argue that, until the criminal proceedings are resolved, the corporations will not be able to completely respond to discovery requests both because the individuals with knowledge of the topics of discovery are likely to assert their Fifth Amendment rights and because the Government has control of virtually all of the documents that would be responsive to the Plaintiffs' anticipated requests.

On his own behalf, Jack Weingold argues that he will be prejudiced by any negative inference that might flow from his need to assert the Fifth Amendment in response to civil discovery requests posed while parallel criminal proceedings are ongoing.

The Defendants also argue that a stay will not prejudice either the Plaintiffs or the public, and will,

in fact, ultimately lead to a more efficient resolution of the case. In particular, they assert that resolution of the potential criminal proceedings would narrow the issues before this Court.

**IV. Government's Motion for a Stay of Discovery**

The Government moves this Court for an eight month stay of all depositions and interrogatories, except those relating to the issue of class certification. The Government does not seek to stay document discovery, however. Contrary to Defendants' assertions, moreover, the Government has indicated that it will provide unfettered access to the documents in its possession so that Defendants can respond to any request for the production of those materials. Like the Defendants, the Government seeks to reserve the right to ask for another stay after eight months, if it believes the additional time is necessary.

The Government argues that unfettered civil discovery will substantially prejudice the Government's ongoing and anticipated criminal investigations and proceedings. In particular, the Government is concerned with the parties contacting Government witnesses and the possible intimidation of these witnesses. The Government also expressed concerns that the Defendants will employ the more expansive civil discovery rules to obtain information that would not otherwise be available to them under the more restrictive criminal discovery rules.

The Government argues that this stay will not prejudice the Plaintiffs and will conserve judicial resources because its own investigative efforts likely will narrow both discovery and the substantive issues before the Court. The Government also contends that Plaintiffs already have approximately 75–80% of the relevant market, and, therefore 75–80% of the potential defendants, before the Court—minimizing any concerns about the need to uncover additional Defendants before the expiration of any applicable statute

6

of limitations.

## V. Plaintiffs' Opposition to a Stay of Discovery

Plaintiffs, on the other hand, vigorously oppose the imposition of a stay for a number of reasons. First, Plaintiffs point out that, while most of the Defendants have received target letters, none have been indicted. Given the absence of indictments, the already lengthy period during which the Government has investigated these allegations without indictments issuing against these Defendants, and the vagueness inherent in the proposed stays, Plaintiffs are concerned that their claims will, as a practical matter, be suspended indefinitely.

Plaintiffs also contend that a stay will substantially prejudice them. Plaintiffs claim prejudice will flow from a number of obvious sources: (1) given the age of some of the key witnesses, some witnesses might not be available to Plaintiffs in the future; (2) witnesses' memories might fade or witnesses might relocate outside the jurisdiction of the Court, perhaps even to unknown locations; and (3) documents or other tangible evidence of the alleged conspiracies might be destroyed. Plaintiffs also assert they will be prejudiced by the passage of time because the statute of limitations is running on their ability to assert claims against additional defendants, or at least their ability to recoup what they believe is the full measure of damages against as-yet unnamed defendants. As Plaintiffs pointed out at the hearing on this matter, the current Defendants have asserted their intention to rely on both statute of limitations and laches defenses, and the Government conceded that, while most would-be defendants have been identified, it could not say that all have been brought into this action to date.

Plaintiffs argue, on the other hand, that Defendants will not, in fact, face substantial burdens from proceeding with discovery—pointing out that corporations do not have Fifth Amendment protections, that Defendants have managed to obtain sufficient information to answer the complaint already, and that Defendants have received assurances from the Government that they will have complete access to their seized documents. And Plaintiffs similarly assert that actions short of a stay can be taken to protect any legitimate interest the Government might have. To this end, Plaintiffs offered to seek approval from the Government before deposing any witnesses and suggested that, absent an order of this Court permitting them to do so, they would not depose any witness to whose deposition the Government objected.

In addition to these points, Plaintiffs note that, unlike in many of the cases where stays have been imposed, the Government is not a party to the case, thus removing any threat that the Government itself might seek to misuse the civil discovery process in order to further its interests in any criminal prosecution. Finally, Plaintiffs emphasize the unique role civil plaintiffs play in the antitrust arena—Congress having created mechanisms for aggressive civil enforcement of the antitrust laws because of the public interest underlying those laws.

## VI. Analysis

Although the Sixth Circuit has yet to weigh in on what standards this Court should use in determining whether to grant the Defendants' or the Government's motion for a stay of discovery, the Court finds the factors listed in the *Golden Quality* case to be appropriate, and, thus, applies them here.

### A. Interests of the Plaintiffs in Proceeding and the Prejudice to Them if a Stay Is Issued

In the complaint, Plaintiffs allege that the Defendants engaged in a conspiracy from at least December 1, 1992 to fix prices, allocate market share, and commit additional unlawful practices to artificially reduce the price of scrap metal. In light of the long duration of the alleged conspiracy, Plaintiffs have a strong interest in expeditiously pursuing their claims and receiving compensation for the alleged long-standing wrongs committed against them. In addition to the legitimate concerns about witnesses' memories fading with the passage of time, Plaintiffs also must be concerned with documents becoming lost and witnesses becoming unavailable.[1]

Plaintiffs are also concerned that the statute of limitations will run on would-be defendants that they have not yet identified. Although the Government contends that approximately 75–80% of the relevant scrap metal market is already before the Court, Plaintiffs, as class representatives, have an obligation to the class to attempt to maximize the possible recovery against all potential Defendants.

The Court concludes, therefore, that Plaintiffs have a strong and substantial interest in proceeding without a stay of discovery.

**B. Burdens on the Defendants if a Stay Is Not Issued**

Defendants argue that they face a substantial burden if they have to defend civil and criminal proceedings simultaneously. Defendants have been targets of a grand jury investigation for the last six years, having been subjected to records searches and subpoenas to testify. Defendants contend that complying with the demands of the Government's criminal investigations has taken a significant toll them

---

[1] As Plaintiffs pointed out at the hearing on this matter, several of the potential witnesses are elderly.

and that the additional obligations imposed by civil discovery would make their burden overwhelming. They contend that this burden would be significantly reduced if the Court stays the civil proceedings until the Government resolves its investigations against them. As Plaintiffs point out, however, it is a function of the antitrust laws, and not of Plaintiffs' personal desire to burden Defendants, that puts Defendants in a position to respond to simultaneous proceedings.

While Defendants acknowledge that the protections of the Fifth Amendment generally do not encompass the production of documents, *United States v. Hubbell*, 530 U.S. 27, 35–36 (2000), Defendants instead argue that they will not be able to respond to the Plaintiffs' discovery requests because the Government has seized many of the necessary documents. The Government has offered, however, to give Defendants full access to these documents on reasonable notice. While this access may not be as unfettered as Defendants would desire, the Court finds, in light of the Government's representations, that Defendants will have sufficient access to the documents in the Government's possession to reasonably comply with their discovery obligations.

Defendants also argue that forcing them to proceed with discovery in this case will result in significant inefficiencies. While Defendants acknowledge that corporations do not have Fifth Amendment protections, they contend that the individuals with the necessary information to respond to Plaintiffs' discovery request do have Fifth Amendment rights and will assert them. Thus, Defendants argue that their discovery responses will be incomplete and will have to be supplemented once any potential criminal charges against the individuals are resolved.

The Court is not convinced. Defendants' argument, in essence, asks this Court to create a Fifth Amendment right for the Defendant corporations. The Defendant corporations cannot, however, use an

individual's Fifth Amendment privilege to create a *de facto* Fifth Amendment privilege for the corporations. *United States v. Kordel*, 397 U.S. 1, 8 (1970). The Defendant corporations must appoint an individual who can satisfy their discovery obligations without fear of self-incrimination. *In re Tower Metal Alloy Co.*, 188 B.R. 954, 957 (Bankr. S.D. Ohio 1995). To the extent that a Defendant cannot provide such an individual, the Court can fashion an appropriate remedy. Defendants acknowledge that the prejudice to Defendants from an individual asserting his or her Fifth Amendment privilege comes from the inference it can create. This prejudice only exists, however, if the Court ultimately allows the trier-of-fact to draw this inference.

Finally, while Jack Weingold does have a Fifth Amendment privilege, unlike the other Defendants, this factor does not require the Court to impose a stay. Indeed, "a defendant has no absolute right not to be forced to choose between testifying in a civil matter and asserting his Fifth Amendment privilege." *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 326 (9th Cir. 1995). Mr. Weingold has already asserted his rights under the Fifth Amendment in response to Plaintiffs' complaint, moreover, raising the specter of a civil inference against him, regardless of any future discovery responses.

In sum, while Defendants face some burdens if the Court does not issue a stay, the Court finds that these burdens are not overwhelming and are, in fact, essentially of the same magnitude that all defendants face in antitrust actions.

### C. Convenience of the Court and Judicial Efficiency

Defendants contend that the Court's time will be needlessly wasted if these proceedings are not stayed. Defendants argue that resolution of the criminal investigations and potential proceedings will narrow

the scope of both the issues and discovery in this civil action.

The Court is not convinced that substantial judicial savings would occur if it imposed a stay. While both Defendants and the Government have asked for limited stays, they acknowledged that the stay they seek is essentially indefinite in nature. Both have indicated that, depending on the circumstances that exist at the end of the proposed stay, they may move the Court for an additional stay. Indefinite stays, however, are discouraged. *United States v. Banco Cafetero Int'l*, 107 F.R.D. 361, 366 (S.D.N.Y. 1985) (*citing Landis v. North American Co.*, 299 U.S. 248 (1932)).

The Court has an obligation to move its docket, and not to let cases languish before it. *In re Tower Metal Alloy Co.*, 188 B.R. 954, 957 (Bankr. S.D. Ohio 1995) ("[C]ourts are mindful that a policy of issuing stays 'solely because a litigant is defending simultaneous multiple suits would threaten to become a constant source of delay and an interference with judicial administration.'") (*quoting Arden Way Assocs. v. Boesky*, 660 F. Supp. 1494, 1497 (S.D.N.Y. 1987)); *United States v. Private Sanitation Indus. Assoc. of Nassau/Suffolk, Inc.*, 811 F. Supp 802, 808 (E.D.N.Y 1992) ("[C]onvenience of the courts is best served when motions to stay proceedings are discouraged."). The Government has been investigating this industry in general for seven years and these Defendants in particular for three. While the Government does not believe that its investigations will continue beyond the eight months it has requested, the investigations are not the only issue. Depending on the outcome of the investigations and Defendants' response, criminal proceedings could extend well beyond the near future. As Plaintiffs have argued, resolution of these potential criminal proceedings will not necessarily narrow the issues presented in this civil action. Plaintiffs may decide to seek redress against Defendants that the Government has chosen not to prosecute, for example. Plaintiffs must also prove damages, which is not an element the Government must

prove.

The Court concludes that the limited judicial savings from staying the civil proceedings is not sufficient to outweigh the Court's obligation and interest in allowing the case to proceed.

### D. Interests of the Government

The Government argues that a stay is necessary to preserve the integrity of its investigations and possible prosecutions. In particular, the Government expressed concerns about Plaintiffs likely desire to depose two witnesses, Howard Bahm and Kenneth Karpinski, as well as the possibility that potential cooperating witnesses might be intimidated by the threat of civil proceedings against them, or even by the need to respond to discovery in this complex case. The Government also has expressed concerns that Defendants could use the civil discovery procedures to obtain information regarding the Government's criminal investigations to which they would not otherwise be entitled, though it did not explain the precise nature of its concern in this regard. As the Government is not a party to this litigation, any concern that either the Government or the Defendants will abuse the discovery process is minimized. *In re Tower Metal Alloy Co.*, 188 B.R. 954, 957 (Bankr. S.D. Ohio 1995).

As a general matter, the Court recognizes the strength and legitimacy of the Government's concerns. The Court believes, however, that it can take measures other than imposing a complete stay of discovery that would minimize the Government's concerns while, at the same time, allowing discovery to proceed. Plaintiffs have already represented to the Court that they do not intend to interfere with the Government's investigations, and would not depose either Bahm or Karpinski at this time. Out of an

abundance of caution, Plaintiffs also proposed a procedure by which they would seek the Government's approval before deposing any witnesses.

### E. Public Interests

Finally, the public interest is best served by allowing these proceedings to continue. The Supreme Court has recognized there is a "longstanding policy of encouraging vigorous private enforcement of the antitrust laws." *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 745 (1977). Under similar circumstances to those present here, the Supreme Court affirmed a district court's denial of an extension of time where witnesses asserted their Fifth Amendment rights. *Standard Sanitary Mfg. Co. v. United States*, 226 U.S. 20, 51–52 (1912). Despite the fact that parallel criminal proceedings were underway, the Court determined that a *per se* rule requiring an extension of time was not warranted. "An imperative rule that the civil suit must await the trial of the criminal action might result in injustice or take from the statute a great deal of its power." *Id.* at 52. Thus, the Court left the ultimate decision to the discretion of the district court. *Id.*

Here, Plaintiffs alleged a long-standing and widespread conspiracy to fix prices in the scrap metal market. The public interest is best served by allowing Plaintiffs to pursue these claims.

## VII. Conclusion

The Court, upon considering all of these factors, concludes that the balance of factors tips against

14

the imposition of a stay of discovery. The Court finds that the Government's concerns in imposing a stay can be addressed by measures short of a complete stay of discovery. While Defendants' do have legitimate interests in a stay, these interests are outweighed by the substantial interests of the Plaintiffs, the Court, and the public. The Court concludes, therefore, that the extensive stays of discovery requested by the Government and Defendants are inappropriate and **DENIES** the Government's and Defendants' motions for a stay (docket numbers 33, 44, 60, and 61).

In light of the Government's concerns about protecting the integrity of its investigations, however, the Court does impose the following restrictions on discovery:

(1) The Government shall, within ten (10) days of the date of this order, submit to the Court under seal a list of all of witnesses whose deposition would materially affect the integrity of the Government's investigations and shall include a brief explanation (no more than several lines) of why each such witness is included on the list. The Government has a continuing obligation to supplement this list as it discovers additional witnesses and to remove individuals, if appropriate, from this list.

(2) Before any party can notice a deposition, the party must first submit the name of the individual to be deposed to the Court. The Court will compare this name to the Government's list, consult the Government regarding the continued vitality of that aspect of the list, consider the concerns expressed by the Government as it relates to the putative deponent, and inform the party (and the Government) if the requested deposition may proceed.

(3) These restrictions will remain in place through July 7, 2003, at which time the

Government can request that the Court extend the duration of these restrictions for good cause.

**IT IS SO ORDERED.**

                                            **s/Kathleen M. O'Malley**
                                            **KATHLEEN McDONALD O'MALLEY**
                                            **UNITED STATES DISTRICT JUDGE**