UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: SCRAP METAL | : | CASE No. 1:02 cv 0844 |
| ANTITRUST LITIGATION | : | |
| | : | JUDGE KATHLEEN O'MALLEY |
| | : | |
| | : | |
| | : | **ORDER** |
| | : | |

Currently before the Court are two post-trial motions relating to attorneys' fees and costs. The pending motions are:

1. *Class Plaintiffs' Motion for Bill of Costs and Attorneys' Fees and Expenses Pursuant to the Clayton Act (15 U.S.C. § 15)* (Doc. 644); and

2. *Motion of Defendant Columbia National Group, Inc. for Bill of Costs* (Doc. 659).

The Class Plaintiffs' ("Plaintiffs") motion seeks both attorneys' fees and costs from Defendant Columbia Iron & Metal Company ("Columbia"), against whom Plaintiffs obtained a judgment on February 10, 2006 (Doc. 640). Columbia has opposed the Plaintiffs' motion (Doc. 667), arguing that the unique circumstances of this case require numerous reductions to the Plaintiffs' proposed fees and costs requests. The Plaintiffs have not replied to Columbia's opposition.

Columbia National Group, Inc.'s ("Columbia National") motion seeks costs from the Plaintiffs, against whom Columbia National obtained a judgment on February 14, 2006 (Doc.

641).  Plaintiffs have opposed Columbia National's motion (Doc. 665), arguing that it should be denied completely.  Columbia National has replied (Doc. 668).

These matters are now ripe for resolution.  For the reasons outlined in greater detail below, *Class Plaintiffs' Motion for Bill of Costs and Attorneys' Fees and Expenses Pursuant to the Clayton Act (15 U.S.C. § 15)* (Doc. 644) is **GRANTED in part**; and *Motion of Defendant Columbia National Group, Inc. for Bill of Costs* (Doc. 659) is **DENIED**.

## I.      BACKGROUND

This case began in May of 2002[1] when Plaintiffs, on behalf of themselves and others similarly situated, brought a class action alleging violations of the federal antitrust laws, specifically Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26.  In all, Plaintiffs alleged that eleven scrap dealer companies engaged in a conspiracy to fix prices, allocate customers, rig bids and commit other illegal acts designed artificially to reduce prices of ferrous and nonferrous industrial scrap metal sold to the scrap dealers by the Plaintiffs.  In sum, Plaintiffs generate industrial scrap metal *via* their business activities.  The Defendant scrap dealers collect (*i.e.*, buy) that scrap, which is then processed and sold.  Plaintiffs alleged that the conspiracy harmed them by depressing the prices paid by the dealer-Defendants to the Plaintiffs.

Early in the litigation, the Court appointed *Boies, Schiller & Flexner LLP* ("Boies") as lead counsel for the Plaintiffs.  It also appointed Edmund Searby of the law firm of *Scott + Scott LLC* ("Scott") as liaison counsel for the Plaintiffs (Doc. 26).[2]  On motion by the Plaintiffs, and without opposition from Defendants, the Court later granted class certification and the Plaintiffs

---

[1]      On August 15, 2002, Plaintiffs amended their complaint to add Columbia and Columbia National as Defendants.  *See* Doc. 30.

[2]      Other law firms and lawyers also were appointed to serve in various roles at this time.  These "other firms," however, have not had an incredibly active role in the case following the numerous settlements in 2004.  Also, at the time of his appointment, Mr. Searby was not affiliated with *Scott + Scott LLC*.

proceeded against the Defendants as a class, consisting of ferrous and nonferrous scrap generators (Doc. 385).[3]  Over the next year and a half, all but three of the eleven Defendants settled with the Plaintiffs or were dismissed for various reasons.[4]  In connection with those settlements, the Court has awarded Plaintiffs to date a total of $3,060,000.00 in attorneys' fees (Doc. 452).[5]  The three Defendants that did not settle were Columbia, Columbia National and DeMilta Iron and Metal ("DeMilta").

On January 23, 2006, Plaintiffs proceeded to trial against those three Defendants.  Of note, Columbia and Columbia National were represented by the same counsel throughout this litigation.  As evidenced by the pre and post-trial record, their defenses were materially indistinguishable from one another in so far as counsels' representation was concerned.[6]  Indeed,

---

[3]      Throughout the entirety of this litigation, despite Columbia's "eve of trial" request to decertify the class (Doc. 584) which the Court denied, the class has been defined as follows:

> *All persons or entities with scrap generating facilities located in Northeast Ohio and the surrounding counties, which is comprised of Ashtabula, Cuyahoga, Lake, Lorain, Medina, Stark and Summit counties, who sold ferrous or nonferrous industrial scrap metal to Defendants between December 1992 and March 2000.  Excluded from the Class are Defendants, and their respective parents, subsidiaries and affiliates, as well as any governmental entities.  Also excluded from the Class is any party, whether named or not, who is ultimately deemed to have participated in an illegal conspiracy.*

*See* Doc. 385 at 27.

[4]      The Bluestar settlement – preliminarily approved by the Court on January 17, 2006 (Doc. 575) – has not yet been "finally" approved by the Court because the Plaintiffs have requested (Doc. 552), and the Court has agreed (non-doc order on August 4, 2006), that such approval – and the Plaintiffs' attendant notice obligations – be deferred until such time as any trial judgment dollars may also be available for distribution.  The Court has granted this request in the interest of efficiency.

[5]      In connection with those settlements, the Court also awarded $1,614,719.00 for expenses. Of note, however, the attorneys' fees awarded to date does not include any fees the Plaintiffs will request in connection with the Bluestar settlement, the resolution of which, has been deferred (see above).  The anticipated fees and costs petition in connection with the Bluestar settlement, therefore, should be considered in conjunction with the instant motions.

[6]      While the Columbia Defendants' defense theories at trial differed slightly in terms of their respective involvement (*i.e.*, degree of involvement) in the alleged conspiracy, no clear

essentially every filing these parties made was a "joint filing."  For example, their motions, briefs, proposed jury instructions and verdict form and their oral Rule 50(b) motion at the close of the Plaintiffs' case were all jointly submitted.  The only substantive papers these parties have filed independently are their post-trial motions, the need to differentiate between them being dictated only by the jury's somewhat surprising decision to issue differing verdicts as to them.[7]

On February 9, 2006, the jury returned a split verdict.  As to Columbia National and DeMilta, the jury found no liability.  As to Columbia, however, the jury found liability and awarded the Plaintiffs $11,500,000.00 in damages (Doc. 636).  Thereafter, the Court issued two judgment entries – one in favor of Columbia National and DeMilta against the Plaintiffs (Doc. 641), and another in favor of the Plaintiffs and against Columbia in the amount of $23,036,000.00 (Doc. 640).[8]  The instant motions followed, along with various other post-trial motions by Columbia.[9]

## II.    DISCUSSION

---

delineation of witnesses or exhibits distinguished their cases.  Indeed, the manner in which counsel jointly defended these Defendants indicates that substantially the same efforts (*i.e.*, time and expense) would have been expended had either been the only Columbia Defendant involved. To the extent a distinction can be drawn, in any event, Columbia National rode Columbia's "coat tails," and not the other way around.

[7]    It is not inaccurate to say that everyone in the courtroom other than the jury was surprised, at least to some degree, by the different verdict.  Given how the case was presented and how it was defended – *i.e.*, largely jointly as to the two Columbia Defendants – most trial participants expected similar verdicts as to both of those Defendants.  Thus, while the jury reasonably could have gone "either way" in this case, their decision to go separate ways as to the Columbia Defendants at least raised eyebrows.

[8]    Pursuant to 15 U.S.C. § 15(a), the Court tripled the jury's award to $34,500,000.00.  The Court then offset that amount by the monies received from the other Defendants' settlements, which totaled $11,464,000.00.

[9]    Columbia filed post-trial motions for judgment as a matter of law, a new trial and/or amendment of the $23,036,000.00 judgment.

In their respective motions, Plaintiffs (as against Columbia) and Columbia National (as against the Plaintiffs) seek costs pursuant to Federal Rule of Civil Procedure 54(d).  In relevant part, Rule 54(d)(1) provides:

> Except when express provision therefore is made either in a statute of the United States or in these rules, <u>costs other than attorneys' fees shall be allowed as of course</u> to the prevailing party <u>unless the court otherwise directs</u> . . . .

Fed. R. Civ. P. 54(d)(1) (emphasis added).  "This language creates a presumption in favor of awarding costs, but allows denial of costs at the discretion of the trial court."  *White & White, Inc. v. American Hosp. Supply Corp.*, 786 F.2d 728 (6th Cir. 1986).

Pursuant to 15 U.S.C. § 15, which also serves as a basis for an award of costs, Plaintiffs also seek (as against Columbia) attorneys' fees.  In relevant part, 15 U.S.C. § 15 provides:

> [A]ny person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefore in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, an shall recover threefold the damages by him sustained, <u>and the costs of suit, including a reasonable attorney's fee</u>.

15 U.S.C. § 15 (emphasis added).  Upon complete review of the authorities cited by the parties, it is clear that the Court enjoys wide discretion with regard awarding costs and fees.  Indeed, the parties do not dispute the Court's discretion in this regard.  As necessary, the Court addresses the law relative to specific applications of its discretion, as well as any additional relevant underlying factual information, throughout its analysis below.

    **a.  *Class Plaintiffs' Motion for Bill of Costs and Attorneys' Fees and Expenses Pursuant to the Clayton Act (15 U.S.C. § 15)* (Doc. 644)**

After filing their motion, Plaintiffs filed a revised memorandum (Doc. 661), which adjusted the amount of requested fees and costs.  Along with that memorandum, Plaintiffs filed

two affidavits with voluminous supporting materials – *e.g.*, legal bills (with narratives) and vendor invoices.  The revised materials included additions to, <u>and</u> deductions from, the original requests.  Indeed, as to fees, the revised request included substantial <u>additional</u> deductions for time attributed to matters unrelated to the Plaintiffs' case against Columbia.  These deductions included, for example, time related to settlement matters, claim administration and the Plaintiffs' case against DeMilta.  The materials did not identify a specific or general deduction attributed to Columbia National.  The Court relies on the final figures outlined in the Plaintiffs' revised memorandum, therefore, as illustrative of Plaintiffs' ultimate requests.

Columbia *principally* disputes only the amounts Plaintiffs seek, not their right to costs and/or fees generally.[10]  Several of Columbia's arguments relate equally to the Plaintiffs' costs and fees requests and may be addressed generally – *i.e.*, Columbia seeks general percentage deductions based on the circumstances of the case.  The Court addresses Columbia's general arguments first and then turns to its request-specific arguments below.

Columbia opposes the Plaintiffs' costs <u>and</u> fees requests in two <u>general</u> respects.  First, Columbia argues that a 50% overall deduction is warranted because only one category of Plaintiffs (*i.e.*, the ferrous Plaintiffs) prevailed against Columbia.  Second, Columbia argues that an additional 66% overall deduction is warranted to account for Plaintiff's failure to prevail against Columbia National and DeMilta – *i.e.*, 66% of the Defendants were found not to be

---

[10]      Though Columbia's opposition essentially relates to the *extent* of Plaintiffs' request, it does at the outset *summarily* argue that costs and fees are *wholly* inappropriate – and that Plaintiffs' motion should be denied outright – because the motion is premised on a recovery for a "prevailing" class of ferrous <u>and nonferrous</u> Plaintiffs.  Because the Court entered judgment against the nonferrous members of the class, Columbia, though without any argument or legal support, asserts that "the class" did not prevail.  Though a reduction is warranted to account for the nonferrous portion of the case, which the Court addresses *infra*, the deficiency Columbia identifies does not infect the Plaintiffs' status as a "prevailing" party.  Accordingly, the material aspects of Columbia's opposition relate only to the extent of the costs and fees to which Plaintiffs are entitled.

liable.  In this regard, Columbia argues that the Plaintiffs limited 20% "DeMilta deduction" is insufficient.

In support of its first argument, Columbia presents no legal authority beyond the language of Rule 54(d) and 15 U.S.C. § 15, which permits "prevailing" parties to recover fees and costs.  Based on that language alone, Columbia argues that the Plaintiffs' overall fees must, at a minimum, be reduced by 50% to account for the portion of the class who did not *prevail* against Columbia.  The court rejects this argument.

By way of background, Columbia moved to decertify the class (as a whole) just days before the trial was set to begin.  In sum, and despite its failure to raise the issue on any number of more appropriate prior occasions, Columbia argued that the Plaintiffs had violated Rule 23 by failing adequately to provide notice to the nonferrous Plaintiffs of the import of a judgment against them.  In some form or another, the parties expected a judgment against the nonferrous class members because the Plaintiffs' expert had conceded that, though he believed a conspiracy existed as to them, he was unable *to identify* conspiracy-related damages on behalf of the nonferrous Plaintiffs.  Though the Plaintiffs asked the Court to redefine the class to exclude the nonferrous scrap generators, given that the trial was just days away at the time, the Court opted instead to enter judgment as a matter of law against the nonferrous Plaintiffs.  Columbia now seizes upon that decision to argue that that "half" of "the class" did not prevail.

Columbia cites no legal authority beyond the generic language of Rule 54(d) and 15 U.S.C. § 15 for the proposition that the Court's decision to enter judgment against a discrete portion of the class – which Columbia, again without support, claims should be deemed the equivalent of 50% of the class – now prevents the remaining Plaintiffs from recovering all of the

fees associated with their case against Columbia.[11]  If any independent efforts are attributable to the nonferrous portion of the class, they are minimal at best.  No additional deduction is necessary to account for the Court's judgment against the nonferrous generators.

Next, Columbia argues that the 20% *limited* deduction the Plaintiffs self-imposed to account for their failure to prevail against DeMilta is insufficient.  Instead, Columbia argues that a 66% overall deduction is warranted because the Plaintiffs failed to prevail against DeMilta and Columbia National.  The Court rejects both aspects of Columbia's arguments, at least in part.

As to DeMilta's portion, it is important initially to recognize that, in addition to the generic 20% deduction for all fees incurred from December 2005 to February 2006, the Plaintiffs' affidavits represent that they deducted all charges prior to that time that did not relate to the Plaintiffs case against Columbia.[12]  Accordingly, specific DeMilta-related charges prior to December 2005 have been removed from Plaintiffs request.  Columbia's criticism that the Plaintiffs have only made deductions for less than three months, therefore, is wrong.

With regard to the sufficiency of the 20% deduction, the Court finds that it is sufficient. The truth is that DeMilta's involvement in the months leading up to the trial – and certainly including the trial – was minimal when compared with Columbia.  A review of the docket filings and the trial transcript more than support this conclusion.  In contending for a 33% deduction for DeMilta, Columbia relies solely upon its *pro rata* contention.  It does not point to trial or pretrial activity by or in response to DeMilta, or in Plaintiffs' proofs as to DeMilta, which would support that number.   The Plaintiffs' 20% deduction relative to DeMilta is sufficient.

---

[11]     On the contrary, testimony at trial revealed that the majority of the scrap purchases involved *ferrous* scrap.

[12]     For the reasons outlined in the Plaintiffs' opposition to Columbia National's motion for costs, the Court assumes that the Plaintiffs treated all time dedicated to their case against the Columbia Defendants equally, and did not differentiate between Columbia and Columbia National.

Equally unpersuasive is Columbia's argument that a 33% overall deduction is warranted to account for Columbia National's victory.  Unlike its argument *vis-à-vis* DeMilta, Columbia cites authority for the proposition that fees attributed to sufficiently "distinct" claims are not recoverable and argues that the claims against Columbia National fall within that rule. *See Arthur S. Langenderfer, Inc. v. Eckerhart*, 461 U.S. 424 (1983).  Again, however, Columbia National does not point to specific pretrial filings or to specific aspects of the trial which exclusively, or even primarily, related to Columbia National or to its *independent* defenses to the Plaintiffs' claims.  An actual view of the trial transcript reveals that, while there was discussion at trial of the interrelationship among the various Columbia-related entities, that discussion was pertinent not just to the liability of Columbia National, but to the Plaintiffs' theory regarding Columbia's role in the conspiracy as well.  Thus, the Court has found no evidence presented at trial that would not have been necessary in the absence of Columbia National – and Columbia National points to none.

Clearly, the Plaintiffs' claims against all of the trial Defendants were related; indeed, they were identical.  Further, the Sixth Circuit has stated, "[n]or should fees be reduced when the suit is successful against some of the defendants but not others <u>if the theories of recovery are related</u>." *McHugh v. Olympia Entertainment, Inc.,* 37 Fed. App. 730, 740 (6th Cir. 2002) (emphasis added).  While Columbia points out that *McHugh* is "not binding" because the decision was not recommended for publication, its logic, which is directly applicable here, remains persuasive.   Applying its logic, and based on a common sense understanding of how this litigation was actually conducted, the Court <u>concludes</u> that an <u>additional deduction of 15%</u> is more than sufficient to account for Columbia National's judgment against the Plaintiffs.[13]

---

[13]     While, given the way the case was tried by all parties, the Court could justify taking a much smaller deduction – possibly even none – for Columbia National.  As will be explained later, the Court finds it appropriate to take this 15% deduction, in part, to account for Columbia

Thus, the Court finds that a total across-the-board reduction in Plaintiffs' fee request is appropriate to account for Plaintiffs' failure to prevail against DeMilta and Columbia National.

### i. Costs – Rule 54(d)(1) and 15 U.S.C. § 15

Plaintiffs seek a total of **$137,477.72** in costs.  Respectively, Boies requests $132,938.82 and Scott requests $4,508.90.  Each firm's figure derives from court reporter fees (including transcript costs), photocopying fees, witness fees, subpoena fees, professional services for locating / serving witnesses and trial graphics fees.  The specific amounts attributed to each of these items are set forth in the Plaintiffs' supporting materials.  *See* Docs. 644-4 and 663.

Beyond the general arguments outlined above, Columbia specifically contests Plaintiffs' requests for costs in only two respects.  First, Columbia argues that Plaintiffs' assessment of $0.15 per page (Boies) and $0.25 per page (Scott) for copying is unreasonable.  Second, Columbia argues that Plaintiffs' "service" costs are unreasonable because they are not supported by adequate mileage documentation (assuming mileage contributed to the private vendors' fees) and all exceed $45 per occurrence, which is the cost assessed by the United States Marshal for the Northern District of Ohio (plus mileage).

As to Columbia's first argument, the Court simply <u>disagrees</u>.  As has been characteristic of its post-trial practice, Columbia advances questionable arguments on minor issues and yet provides little grounds for the analysis it asks the Court to undertake on the rulings it requests.[14]

---

National's right to reimbursement of certain of its expense.  Hence, while the Court later denies Columbia National's specific expense request, for reasons that will be explained, some expense shifting is built into this aspect of the Court's decision on the Plaintiffs' fee request.

[14]     As has also been its practice, Columbia also fails to impose the same standards on itself which it seeks to impose on the Plaintiffs.  Columbia National's motion for costs (Doc. 659) – which was filed by the same counsel – seeks copying costs.  The "supporting documentation" submitted in connection with that motion, however, does not even include invoices or other documents supportive of the generic dated "copying costs" Columbia National purports to have incurred.  Nor does the affidavit identify the per-page cost for the $23,988.09 Columbia National seeks.  In this regard, Columbia National (through the same counsel) has effectively ignored the

Here, the essence of Columbia's argument is that, because (1) Boies and Scott's charges for photocopying are different, and (2) outside vendors (even if only one) at some point charged less than either firm's internal costs, these firms' respective $0.15 per page (Boies) and $0.25 per page (Scott) costs are necessarily unreasonable.  As such, Columbia argues that each firm's per-page cost should be reduced by approximately $0.10.

As an initial matter, parties involved in litigation spanning a 4-year period cannot be expected to assure that all copying costs they incur will be uniform.  In this regard, Columbia's reliance upon a particular vendor who, at a particular time, charged less than the costs incurred by the firms for their in-house operations is inappropriate.  Further, Columbia gives no consideration to the fact that Boies and Scott are located in different parts of the country where associated costs *may* vary significantly, nor to the fact that the Boies firm is much larger than the Scott firm and may, thus, enjoy certain economies of scale not available to its counterpart.  For this reason, the disparity between Boies and Scott's in-house costs is not necessarily problematic.  Nor is it problematic that these firms, at one point in time, from a particular vendor, gained a more favorable copying price.  That phenomenon is easily explained by volume discounts often given where large-scale jobs are shipped out for copying.  On balance, the Plaintiffs' costs in this regard – or at least their documentation for their costs – are reasonable, especially when compared to Columbia National's submissions for the same items.  The Court finds that Plaintiffs' copying costs, as outlined, are sufficiently documented and sufficiently reasonable to warrant full recovery.

---

very criticism Columbia makes here.  Neither the Court, nor the Plaintiffs, can determine whether Columbia National's copying costs are uniform, or, even if they are, what per-page rate was applied.

As to Columbia's second argument, the Court <u>agrees in part</u>.  Columbia accurately notes that the Sixth Circuit has directed that prevailing parties may not recover "service costs" incurred through the use of private process servers beyond that which is recoverable from service executed by the United States Marshal.  *Arrambide v. Wal-Mart Stores, Inc., 33 Fed. Appx.* 199, 202-03 (6th Cir. 2002).  Columbia argues, therefore, that any expense beyond $45 per "service" event is not taxable to Columbia because the U.S. Marshal for the Northern District of Ohio charges $45 per event.  In so far as Columbia's argument has merit, and is unopposed because the Plaintiffs have elected not to reply, the Court concludes that an adjustment is warranted.  The Court disagrees, however, with the generic 25% overall "costs" deduction Columbia proposes in its summary, which also captures Columbia's proposed $0.10 per-page reduction in copying costs rejected above.  *See* Doc. 667 at 10.[15]  A much less substantial deduction is warranted, as outlined below.

### *Costs Deduction Warranted*

Having concluded that the Plaintiffs' copying costs are reasonable, the Court only adjusts the Plaintiffs' request in connection with the arguably excessive "service" costs.  The Court **<u>FINDS</u>** that a 5% overall deduction (*i.e.*, approximately $6,800.00) from Plaintiffs' requested costs is warranted.

### ii.        Attorneys' Fees – 15 U.S.C. § 15

---

[15]        In addition to its arguments for 50% and 66% overall deductions, Columbia proposes a generic 25% deduction for all cost "overcharges."

Plaintiffs seek $3,089,949.90 for qualifying non-reimbursed time charges and $13,297.61 for computerized legal research, for a total of **$3,103,247.51** in attorneys' fees.[16]  In reaching these figures, Plaintiffs did the following:

(1)  They audited all of their bills from the beginning of the case and deducted all charges related to matters other than the prosecution of their case against Columbia;

(2)  In addition to the above deductions, they reduced their fees from December 1, 2005 through February 10, 2006 by an additional 20% to account for the jury's "no liability" finding against DeMilta;[17]

(3)  They included "other firm time" up through August of 2004 ($1,312,588.00);[18]

(4)  They deducted the fee award from the 2004 settlement(s) ($3,060,00.00);[19] and

(5)  They added a total of $13,297.61 for computerized legal research.[20]

Accordingly, in their revised memorandum (Doc. 661), the Plaintiffs have summarized their attorneys' fees request as follows:

---

[16]  Plaintiffs accurately point out that courts regularly include computerized legal research expenses in attorneys' fees calculations.  Columbia does not challenge this proposition.

[17]  No similar percentage deduction was made for Columbia National because the Plaintiffs maintain that Columbia National's defense mirrored – at least in so far as representational efforts are concerned – that of Columbia.  In that regard, for reasons largely already explained in this opinion, the Plaintiffs maintain that a DeMilta-like deduction is not warranted.

[18]  This time relates to time expended by firms other than Boies and Scott prior to August of 2004 – *e.g.*, members of the Executive Committee.  Documentation relative to this "other firm" time previously was submitted in November of 2004 (Doc. 435) and has been incorporated by reference in the Plaintiffs' present motion.

[19]  *See* Doc. 452.

[20]  The firms' respective portions of the computerized legal research figure are:  (1) $12,809.08 for Boies; and (2) $488.53 for Scott.

| | |
|---|---|
| Total BSF time from 8/02 - 2/06 less deductions: | $4,608,112.70 |
| Total Scott time from 8/04 - 2/06 less deductions: | $   229,249.20 |
| | $4,837,361.90 |
| Total other firm time up to 8/04: | $1,312,588.00 |
| Subtotal: | $6,149,949.90 |
| Less 2004 fee award: | $3,060,000.00 |
| | $3,089,949.90 |
| Computer legal research: | $    13,297.61 |
| **Total requested fees:** | **$3,103,247.51** |

Beyond its general arguments outlined above, Columbia specifically contests the Plaintiffs' fees request in three respects.  First, Columbia argues that the number of hours expended, and the rates associated with those hours, are unreasonable and should be reduced.  Second, Columbia argues that the Plaintiff's have not provided sufficient documentation for the $1,312,588.00 attributed to "other firm time" up to August of 2004, thereby rendering that amount wholly unrecoverable.  Third, Columbia argues that Plaintiffs should not be permitted to recover fees incurred during travel, an amount Columbia represents to be $122,660.00.  Alternatively, Columbia argues that all travel-related fees should be separated and reduced by half.[21]

### Number of Hours and Hourly Rates

As to Columbia's first argument, the Court initially notes that Columbia's challenge to the number of hours for which Plaintiffs seek reimbursement is problematic because the

---

[21]  In sum, therefore, Columbia seeks either a $122,660.00 or a $61,330.00 reduction to the Plaintiffs' overall fees request.

Columbia Defendants were the driving force behind at least a portion of the hours counsel expended on behalf of the Plaintiffs in this litigation – especially in the months leading up to and during the trial. While Columbia certainly had every right to insist on its day in court and to pursue its defenses aggressively, the most objective of observers could not help but conclude that Columbia "over-tried" this case. While Columbia's strategy may have been to wear the Plaintiffs down – a strategy many counsel have chosen to pursue in similar complex cases – that strategy is not without risks. Thus, while Columbia was at least partially successful in so distracting Plaintiffs' counsel that Plaintiffs' proofs on certain aspects of the case (*e.g.*, as to DeMilta) were deemed lacking by the jury, Columbia, in the process, necessarily multiplied the litigation – and the costs attendant thereto. In cases where fee shifting is warranted, aggressive litigation tactics are a calculated risk.

Columbia's effort to seek a reduction by comparing the size of its legal team with the Plaintiffs' is also unpersuasive. This case began with eleven Defendants. Throughout, especially from the Plaintiffs' perspective, this case has involved voluminous discovery that had to be harmonized and organized in connection with the case as a whole – as opposed to each Defendants' fairly individualized concerns. As such, it is not surprising in the least that the Plaintiffs' litigation team – under the circumstances of this case – would be larger than each of the individual Defendants' teams.

For these reasons, except to the extent referenced below relating to travel-related fees, Columbia's arguments relative to the number of hours expended is rejected. The Court finds that the Plaintiffs own reductions adequately account for all time not reasonably necessary to pursue their claims against Columbia.

Columbia's challenge to the Plaintiffs' counsels' hourly rates – at least those of Boies –presents a closer question, though the Court ultimately finds it unpersuasive.  Both parties accurately cite the law relative to the considerations applicable to the Court's determination as to what "legal market" applies – they simply disagree as to whether a "national market" may be considered.  Plaintiffs argue that that the complexity – both in size (class action) and substance (civil antitrust) – of this case warrants application of a national rate.  Columbia criticizes the Plaintiffs' view that this case is sufficiently "complex" to warrant national rates, however.  Citing a seemingly inconsistent comment made in Plaintiffs' motion to disqualify Columbia's counsel (Doc. 560), which spawned from Columbia's failure to disclose material information regarding a witness, Columbia argues that the Plaintiffs previously contended that this case was *not* complex.

Columbia's argument is unpersuasive.  Columbia does not assert – and certainly does not support – that the scope and nature of this case is not sufficiently complex to warrant application of "national market" billing rates.  Instead, it seeks only to capitalize on an apparent inconsistency in Plaintiffs' views on the "complexity" issue, implying that Plaintiffs are willing to say whatever is necessary to get their way.  In this regard, Columbia's argument is facially weak because it is not premised on a substantive argument that the case is not sufficiently complex.  In other words, simply because the Plaintiffs once argued that the case is not as complex as they now contend, does not make it so.  Similarly, the fact that Columbia once cited to the complexity of the case to resist that earlier motion, is not controlling.  The parties' views as to "complexity" are not controlling – the actual and real nature of the case is what the Court must examine to determine that question.

16

Because the Court concludes (as it did when it first considered Plaintiffs' motion to disqualify) that this case is complex, the Court finds that it warrants application of national market rates and that the rates requested by Plaintiffs are not automatically problematic.  In any event, the local and regional rates applicable to civil antitrust class actions are not far off from the national rates at issue here.  It is a specialized area of law, generally only practiced by counsel with extensive experience in the area, and usually only litigated by those with ties to large firms.  Accordingly, if a deduction in rates were warranted by a refusal to apply a national rate, it likely would be minimal, at best.[22]

### *"Other Firm Time"*

Columbia challenges the portion of Plaintiffs' fees request relative to "other firm time up to 8/04."  *See* Doc. 661 at 2.  In this regard, Plaintiffs identify $1,312,588.00, which reflects fees incurred by firms other than Boies and Scott.  The sole basis for Columbia's objection is that Plaintiffs have failed to provide adequate documentation of these fees.  Columbia's argument on that basis alone, however, is unpersuasive.  Plaintiffs previously have provided supporting documentation relative to these fees (*see* Doc. 435), and incorporated by reference those materials here.  Accordingly, documentation has been presented.  Having reviewed the Plaintiffs' prior submission, the Court further concludes that it is sufficient with regard to the specificity of services rendered.

What remains unclear, however, is, as Columbia points out, whether deductions similar to those made to all of the other fees at issue have been made in connection with this "other firm time."  In so far as the Plaintiffs have failed to respond to this issue, the Court assumes that such

---

[22]     Interestingly, Columbia's counsel does not disclose their own rates in support of the contention that some of the rates Plaintiffs use are inconsistent with this local market.

deductions may be appropriate and have not been made.  An appropriate adjustment, therefore, is warranted, which the Court specifies below.

### Travel Time

Without summarizing its calculation, Columbia asserts that $122,660.00 of the fees Plaintiffs seek are attributed to "travel."  In so far as the Plaintiffs have elected not to reply to comment on, or otherwise rebut, this figure, the Court assumes it is accurate.

While the "travel expenses" figure Columbia presents may appear excessive on its face, given that this case (1) has been pending for over four years and has involved numerous in-person appearances before the Court, and (2) has involved extensive discovery, including numerous depositions requiring out-of-state counsel to travel, it is not grossly excessive, as Columbia argues.  Nevertheless, because the Court finds that fees for travel are not normally client chargeable in-full, and especially in light of the Plaintiffs' failure to justify these expenses further in response to Columbia's pointed criticisms, some reduction is warranted, which the Court specifies below.

### Fees Deduction Warranted

Having concluded that an appropriate reduction must be made to the Plaintiffs' fees request to accommodate the deficiencies relating to "other firm time" and "travel expenses" component of the Plaintiffs' fees request, the Court **<u>FINDS</u>** that:  (1) a 2.5% <u>overall</u> deduction from the requested fees and expenses is warranted to account for necessary deductions in the

"other firm time" charged; and (2) a 30% specific reduction from the purported travel-related

fees is warranted.[23]

**b.** *Motion of Defendant Columbia National Group, Inc. for Bill of Costs* **(Doc. 659)**

As outlined above, Columbia National's motion is only for costs and is premised solely

on Rule 54(d). Columbia seeks a total of $68,429.00. It argues that, because it prevailed against

the Plaintiffs at trial, it is entitled to recover costs in connection with: (1) court reporter

transcript fees (deposition and trial); (2) copying; (3) printing; (4) scanning and imaging of

documents; (5) exemplification of documents and exhibits and (6) witness fees (*i.e.*, subpoena

and travel costs). The Plaintiffs do not contend that these types of costs are not ordinarily

recoverable under 28 U.S.C. §§ 1821 and 1920, to which Columbia National also cites. Indeed,

the Plaintiffs sought the same, or similar, costs in their motion against Columbia. Rather, the

Plaintiffs simply argue that the circumstances of this case do not warrant a costs award and that

the Court has discretion to deny Columbia National's request. For the reasons briefly outlined

below, the Court agrees with Plaintiffs.

The Plaintiffs present three arguments, to which Columbia National replied. The Court

addresses each in turn. First, citing *White & White, Inc. v. American Hosp. Supply Corp.*, 786

F.2d 728 (6th Cir. 1986), the Plaintiffs point out that district courts enjoy wide discretion in

determining when costs should be awarded. As in *White*, the Plaintiffs highlight that, under

appropriate circumstances, courts may deny cost awards to prevailing antitrust defendants. In

---

[23] The Court makes the 30% specific deduction prior to assessing the 2.5% overall deduction (and others). Given Plaintiffs' failure to respond to Columbia's identification of $122,660.00 in "travel" fees, the Court bases its specific deduction on that amount.

this regard, the Plaintiffs point to several of the factors identified in *White* relative to when a <u>prevailing defendant</u> appropriately may be denied costs.

In response, Columbia attempts to distinguish *White* on its facts by arguing that two of the nine factors the *White* court seized upon in denying the defendant's costs requests are clearly inapplicable here.  Columbia National fails, however, to address the many other factors outlined in *White*, much less that case's overarching theme that the circumstances of each case should inform a court's exercise of its discretion under Rule 54.  In this regard, *White* does not purport to identify a list of required factors that must be found before a fee request may be denied; rather, it identifies various factors courts have considered which might inform the Court's exercise of its discretion. Though for different reasons than those specifically addressed in *White*, the circumstances of this case do not support an award of costs to Columbia National, or at least not beyond that already accounted for in the Court's earlier reduction in the Plaintiffs' fee request.

The principle factor upon which this Court bases its conclusion is expressed in the Plaintiffs' second argument – that the Columbia Defendants mounted a joint defense and Columbia National did not incur any costs beyond those that would have been incurred by Columbia if it had gone to trail alone.  The Plaintiffs accurately point out that the Columbia Defendants shared essentially everything.  They were represented by the same attorneys, called the same witnesses, used the same exhibits and made the same motions and arguments both before and during the trial.  As noted previously, the only substantive papers they filed independently of one another appear to be their post-trial motions, the need to differentiate between them at that point being dictated only by the jury's split verdict.  Further, these Defendants have never sought to differentiate between themselves beyond the recognition of

their parent-child corporate relationship.  In all other respects, however, they referred to themselves jointly and presented their defenses jointly.  A trial against only one of them would have been no different than the trial that actually took place.

Completely ignoring these practical realities (*i.e.,* expense generating activities), and failing to cite any legal authority in support of its criticisms, Columbia National simply argues in response that it was a separate Defendant subjected to independent risk of an adverse judgment. Under the circumstances of this particular case, this argument is unpersuasive, especially in light of the paucity of counsel's documentation relative to the $68,429.00 Columbia National seeks, which is the Plaintiffs' third argument.

Especially given the attacks levied upon the Plaintiffs' voluminous supporting materials in support of their fees and costs requests, Plaintiffs argue that Columbia National's "supporting documentation" – submitted by the same attorneys – is deficient because it fails to detail the costs for which Columbia National seeks reimbursement or attach invoices reflecting the summarized costs.  Though Columbia National indicates in its reply brief that invoices are "available, if necessary," it has failed to provide them – even after being criticized for that failure.  Accordingly, by Columbia National's own conduct, it is impossible for the Plaintiffs or the Court even to calculate, for example, the price-per-page underlying Columbia National's request for $23,988.09 in "copying costs."  Clearly, Columbia deemed such an analysis relevant; yet Columbia National prevents one here.

For these reasons, and because the Court took the existence of Columbia National's expense request into account when authorizing a 15% reduction in Plaintiffs' fee request, the Court  concludes that a reasonable exercise of its discretion under Rule 54 supports a denial of

the specific costs Columbia National seeks.  Accordingly, Columbia National's unsubstantiated request for $68,429.00 in costs must be denied.

### III.    CONCLUSION

For the reasons outlined herein, *Class Plaintiffs' Motion for Bill of Costs and Attorneys' Fees and Expenses Pursuant to the Clayton Act (15 U.S.C. § 15)* (Doc. 644) is **GRANTED in part**.  Pursuant to the Court's calculations above, Plaintiffs are hereby **AWARDED $2,529,820.85** in fees and **$130,575.34** in costs for a total of **$2,660,396.19** (summary below).

For the reasons outlined herein, Columbia National's *Motion of Defendant Columbia National Group, Inc. for Bill of Costs* (Doc. 659) is **DENIED**.

### SUMMARY OF FEES AND COSTS AWARD

| | | |
|---|---:|---:|
| Boies Fees (adjusted) | | $4,608,112.70 |
| Scott Fees (adjusted) | | $229,249.20 |
| Other Firm Time | | $1,312,588.00 |
| Computerized Research (both firms) | | $13,297.61 |
| *Sub-Total* | *$6,163,247.51* | |
| Less 2004 Fee Award | | ($3,060,000.00) |
| Less 30% Specific Travel Deduction | | ($36,798.00) |
| *Sub-Total* | *$3,066,449.51* | |
| Less 17.5% Overall Deduction | | ($536,628.66) |
| ***Total Fees*** | ***$2,529,820.85*** | |
| Requested Costs (both firms) | | $137,447.72 |
| Less 5% Overall Deduction | | ($6,872.39) |
| ***Total Costs*** | ***$130,575.34*** | |
| | | |
| **Total Fees and Costs** | | **$2,660,396.19** |

[24][25][26][27][28][29][30] **SO ORDERED.**

                                    s/Kathleen M. O'Malley
                                    **KATHLEEN McDONALD O'MALLEY**
                                    **UNITED STATES DISTRICT JUDGE**

**Dated:  September 30, 2006**

---

[24]     This amount reflects general deductions of those charges not related to Plaintiffs' case against Columbia.  It also reflects an additional 20% deduction from all fees incurred between December 2005 and February 2006 – *i.e.*, the DeMilta deduction.

[25]     This amount reflects general deductions of those charges not related to Plaintiffs' case against Columbia.  It also reflects an additional 20% deduction from all fees incurred between December 2005 and February 2006 – *i.e.*, the DeMilta deduction.

[26]     *See* Doc. 435.

[27]     *See* Doc. 452.

[28]     This amount reflects a 30% deduction to the $122,660.00 in fees incurred during "travel."

[29]     The 17.5% overall fees deduction encompasses the following:  (1) a 15% overall deduction to account for Columbia National's judgment against the Plaintiffs and Columbia's judgment against the nonferrous portion of the class; and (2) a 2.5% overall deduction to account for the "other firm time."

[30]     Respectively, Boies requests $132,938.82 and Scott requests $4,508.90.